**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RAEVEN BOSWELL,

        Plaintiff,

v.

UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, and TORY VERDI, an individual,

        Defendants.

Case No. 2:26-CV-221

**COMPLAINT**

Filed on behalf of Plaintiff, Raeven Boswell

Counsel of Record for this Party:
Keenan Holmes, Esquire (PA ID #204520)

**JURY TRIAL DEMANDED**

Ebony Law, LLC
213 Smithfield Street
Pittsburgh, PA 15222

Phone: (724) 263-7530
Email: kh@ebonylaw.com

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAEVEN BOSWELL,           :  Case No. 2:26-CV-221

        Plaintiff,      :

                          :

v.                          :

                          :

UNIVERSITY OF PITTSBURGH OF   :
THE COMMONWEALTH SYSTEM   :
OF HIGHER EDUCATION, and     :
TORY VERDI, an individual       :

                          :

        Defendants.

## **COMPLAINT**

## INTRODUCTION

1.    Plaintiff Raeven Boswell ("Plaintiff" or "Ms. Boswell") brings this civil rights action against Defendants the University of Pittsburgh ("Defendant" or "University") and Head Coach Tory Verdi ("Defendant Verdi" or "Verdi") for violations of her rights under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972, and related state common law causes of action. This case arises from systemic emotional, psychological, and retaliatory abuse inflicted by Defendant Verdi within the University's women's basketball program.  This abuse was enabled, tolerated, and perpetuated by the University's deliberate indifference.

2.    Ms. Boswell was subjected to a hostile, discriminatory, and retaliatory environment that undermined her athletic development, compromised her mental health, and threatened her academic and athletic future and deprived her of the full educational benefits of her scholarship. Defendant Verdi, acting both under color of state law and in his official coaching

capacity, weaponized his authority to isolate, marginalize, and psychologically destabilize Ms. Boswell through prolonged silence, manipulation of playing opportunities, racialized dynamics, and threats to her scholarship and eligibility.

3.      This Complaint addresses multiple violations of Ms. Boswell's constitutional and statutory rights, including retaliation for protected conduct, deliberate indifference to a hostile and unequal educational environment, denial of equitable process in scholarship and eligibility decisions, and severe emotional and psychological harm.

4.      Ms. Boswell seeks redress for the significant and long lasting harm she suffered due to the unlawful actions of both Defendants, harm that was foreseeable, preventable, well documented, and directly caused by Defendants' collective failure to uphold their obligations under federal and state law.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law, including 42 U.S.C. § 1983 and Title IX, 20 U.S.C. §§ 1681–1688.

6.      This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant University is located in this District and a substantial part of the events giving rise to the claims occurred here.

## PARTIES

8.    Ms. Boswell is an individual and a former student-athlete who transferred to and enrolled at the University of Pittsburgh in August 2023 on an athletic scholarship to participate in the NCAA Division I women's basketball program.

9.    Defendant University is a public university and recipient of federal funding operating educational programs, including the women's basketball program, governed by Title IX and constitutional law.

10.    Defendant Verdi is the Head Coach of the University of Pittsburgh's women's basketball program.

11.    Upon information and belief, Defendant Verdi resides in the Commonwealth of Pennsylvania.

12.    At all times relevant to this Complaint, Defendant Verdi was acting under color of state law in his capacity as an employee, supervisor, and representative of the University.

13.    Defendant Verdi is sued in his individual capacity for acts taken within and beyond the scope of his employment that violated Plaintiff's constitutional rights, caused emotional harm, and contributed to a hostile educational environment in violation of federal law.

**FACTUAL ALLEGATIONS**

**Recruitment, Transfer, Scholarship, and Plaintiff's Reliance**

14.    Plaintiff Raeven Boswell is a collegiate student-athlete who transferred to the University of Pittsburgh to compete in its NCAA Division I women's basketball program.

15.    Plaintiff was recruited by Defendant University of Pittsburgh ("University") and Head Women's Basketball Coach, Defendant Verdi with assurances that she would be welcomed

into a supportive, development-focused program and afforded meaningful athletic, academic, and professional opportunities

16.     Ms. Boswell was recruited with assurances that she would be a meaningful contributor to the program and that the team environment would be inclusive, empowering, and supportive of her athletic and personal development.

17.     As part of her recruitment, Plaintiff was awarded a full athletic scholarship providing tuition, room and board, and other educational benefits tied to her participation on the women's basketball team.

18.     That scholarship was not merely financial in nature, rather it represented a contractual promise that included access to educational programs, athletic participation, academic support, and institutional resources.

19.     Plaintiff met all obligations under her scholarship agreement, including maintaining academic eligibility, complying with team expectations, and remaining committed to the program.

20.     Plaintiff relied on the University to provide a lawful and supportive environment that would allow her to participate in intercollegiate athletics without fear of retaliation, discrimination, or coercion.

21.     Plaintiff further relied on verbal and written assurances, the Student-Athlete Handbook, and University policies that promised a safe, non-retaliatory, and equitable athletic environment.

22.     Despite transfer-related eligibility delays beyond her control, Plaintiff remained engaged with team activities, complied with all expectations, and demonstrated full commitment to the program.

**Title IX Obligations and Duty to Provide a Lawful Environment**

23.     Under Title IX of the Education Amendments of 1972, Defendant University had both statutory and regulatory obligations to prevent and respond to sex-based discrimination, including the creation and perpetuation of a hostile educational, playing, and work environment through verbal, emotional, and psychological misconduct.

24.     These obligations included the duty to prevent, investigate, and remedy hostile educational, playing, and work environments created through verbal, emotional, and psychological misconduct.

25.     Defendant University exercised control over the women's basketball program, including authority over the hiring, retention, supervision, evaluation, and discipline of coaching staff.

26.     These obligations included a duty to properly hire, supervise, monitor, and discipline athletic personnel, to investigate complaints of abuse, and to protect student-athletes from foreseeable harm.

27.     Defendant University, through its coaching staff and administrators, was required to ensure that student-athletes were not subjected to coercive, degrading, or retaliatory conditions that deprived them of educational access.

28.     Defendant University further owed a duty to ensure that student-athletes could raise concerns regarding misconduct without fear of retaliation, loss of scholarship, or exclusion from the program.

29.     Plaintiff reasonably relied on Defendant University to uphold these obligations, exercise meaningful oversight of its women's basketball program, and intervene when red flags regarding abuse and retaliation emerged.

30.    Plaintiff, a scholarship student-athlete under the control and direction of the University, was required to operate within the women's basketball program as structured, supervised, and enforced by Defendant University and its agents.

**Coach Verdi's Authority, Control, and Abuse of Power**

31.    Defendant Tory Verdi exercised near-total control over the daily athletic, academic, and psychological experiences of the women's basketball team.

32.    Through his role as Head Coach, Defendant Verdi was entrusted with the care, development, and well-being of student-athletes, including Plaintiff.

33.    This position of authority created a special relationship and imposed a duty of care to avoid conduct that would foreseeably cause emotional or psychological harm.

34.    Instead, Defendant Verdi used his authority to engage in emotionally abusive conduct, retaliation, and psychological manipulation that transcended poor coaching and entered into constitutional and statutory violations.

35.    Under Defendant Verdi's leadership, the program was defined by fear and emotional volatility, as players were routinely demeaned, psychologically isolated, and pressured to perform under abusive and destabilizing conditions.

36.    Defendant Verdi fostered a culture of public shaming and arbitrary punishment by maintaining a rigid and controlling atmosphere in which players were discouraged from speaking up and punished if they did.

37.    Plaintiff and her teammates individually and collectively witnessed and experienced patterns of emotional mistreatment. These actions were not isolated or incidental, but reflected a broader pattern of psychological abuse carried out under the pretext of coaching.

**Hostile and Coercive Team Environment**

38.    Plaintiff was required to operate in a coercive and degrading team culture that prioritized fear and manipulation over development and well-being.

39.    Players were made to be afraid to make mistakes or voice concerns because those who did were retaliated against through exclusion, loss of playing time, or verbal reprimand.

40.    After a practice during the 2023–2024 season, Defendant Verdi told the team, "Every night I lay in bed I want to kill myself because of you."

41.    This statement, made by a figure in power, caused fear, emotional distress, and confusion among players and further entrenched the psychologically abusive environment.

42.    Defendant Verdi openly minimized and dismissed mental health concerns, making clear that he was not supportive of player mental well-being.

43.    Defendant Verdi's hostility toward mental health concerns emboldened a culture in which emotional distress was stigmatized, ignored, and weaponized against players.

44.    Defendant Verdi frequently belittled players' appearances, mocked their personalities, and accused players of being "bad people," eroding morale and self-worth.

45.    Defendant Verdi made body-shaming comments toward players, including inappropriate remarks about weight and physical appearance in front of teammates.

46.    Defendant Verdi also subjected players to inappropriate political commentary during team meals, singling out players and making them uncomfortable.

47.    On another occasion, Defendant Verdi directed xenophobic and culturally insensitive remarks toward international players, including telling an international student-athlete to "go back home because ICE is coming."

48.     These statements fostered a climate of fear, humiliation, and exclusion, particularly for international athletes.

49.     The team environment became so toxic that players openly questioned whether they were being abused, including a freshman player, Jasmine Timmerson, asking teammates whether Defendant Verdi's conduct constituted abuse.

50.     Plaintiff had previously experienced trauma and mental health challenges, which were known or should have been known to Defendant Verdi and the University. As a result, Defendant Verdi's conduct posed a heightened and foreseeable risk of serious psychological harm to Plaintiff, rendering his actions particularly dangerous and reckless in light of the power imbalance inherent in the coach-player relationship.

**Plaintiff-Specific Isolation, Manipulation, and Retaliation**

51.     Plaintiff was routinely marginalized, mischaracterized, and pressured to perform under destabilizing conditions.

52.     After undergoing surgery, Defendant Verdi ceased all communication with Plaintiff for nearly six months.

53.     There were no check-ins, no guidance, and no support during her recovery.

54.     This prolonged silence was not inadvertent, rather it was a deliberate tactic of isolation and control.

55.     Plaintiff was praised during preseason workouts and promised a meaningful role, only to later be shifted without explanation into unfamiliar positions that undermined her development.

56.    Plaintiff was given minimal playing time, sometimes mere seconds per game, in a manner designed to marginalize her and prevent eligibility preservation.

57.    Defendant Verdi's manipulation of Plaintiff's playing time and role was not incidental.  It was deliberately calculated to interfere with Plaintiff's ability to qualify for a medical hardship redshirt, thereby jeopardizing her remaining NCAA eligibility and future athletic opportunities.

**Gender-Based Misconduct and Objectification**

58.    During the summer of 2024, Defendant Verdi made a deeply inappropriate gender-based comment to a player, Isabella Perkins, stating, "I don't like you as a player, but I'd let my son date you."

59.    This remark was unwelcome, offensive, and demeaning, and reduced the player's value to physical attractiveness rather than athletic skill or leadership.

60.    The comment exemplified the gendered lens through which Defendant Verdi evaluated and treated female athletes.

61.    On another occasion, Defendant Verdi mocked a players' appearance and weight, including telling one player, "You look pregnant," while she was recovering from injury.

62.    Plaintiff and her teammates repeatedly noted that male athletes at the University were not subjected to similar hostile environments or commentary.

63.    No comparable complaints had emerged from men's teams, and no action was taken when women raised persistent issues.

64.    This disparity deepened the perception that female athletes, particularly outspoken ones, were uniquely subjected to judgment, ridicule, punishment, or exclusion.

**Racialized Dynamics and Intentional Division**

65.    As a Black woman, Plaintiff experienced an additional layer of harm rooted in racial bias and coded criticism.

66.    Defendant Verdi intentionally created and exploited racial division among team members.

67.    Players of color were subjected to harsher discipline, less patience, and fewer opportunities than similarly situated white teammates.

68.    These racial dynamics compounded the emotional abuse Plaintiff already endured and intensified her isolation.

69.    On one specific occasion, Defendant Verdi pitted white players against Black players, claiming that players "hung out" with others who shared the same race.

70.    Defendant Verdi used this as an opportunity to single out Isabella Perkins, stating she was "in the middle" because, although white, she appeared to prefer associating with Black teammates.

71.    Defendant Verdi was directly confronted by a player who accused him of racism based on how he treated Black players.

72.    When confronted, Defendant Verdi told players that some of their teammates were not "good people" and were lucky to still be on the team.

73.    Defendant Verdi later convened a meeting challenging whether players even knew the definition of racism.

74.    Defendant Verdi intentionally attempted to create racial division among team members.

**Institutional Notice, Failure to Intervene and Deliberate Indifference**

75.   Defendant University had a duty to exercise reasonable care in the hiring, retention, and supervision of its athletic personnel, including Defendant Verdi.

76.   At the time of hiring and throughout his tenure, Defendant University knew or should have known that Defendant Verdi exhibited a pattern of emotionally abusive coaching tactics, retaliatory behavior, and discriminatory treatment of players.

77.   These red flags were visible to athletic administrators, support staff, and other members of the University community.

78.   At the end of the 2023–2024 season, Plaintiff attended an end-of-year meeting with Defendant Verdi and Assistant Coach Candice Finley.

79.   During that meeting, Defendant Verdi acknowledged the hostile environment he created and assured Plaintiff that things would be different the following season, including promising her a starting role.

80.   Plaintiff reasonably relied on these representations.

81.   Around the same time, Plaintiff and two other players met with Jennifer Tuscano, the Assistant Athletic Director responsible for supervising Defendant Verdi, and reported his conduct and the hostile environment.

82.   After another player, Gabrielle Hutcherson, was told she no longer had a place on the team, Jennifer Tuscano contacted Ms. Hutcherson via text message and requested a meeting with her and Heather Lyke, the University's Athletic Director.

83.   Ms. Tuscano specifically asked Ms. Hutcherson to meet to discuss her experience within the program and Defendant Verdi's first year as Head Coach.

84.   Ms. Hutcherson met with Ms. Tuscano and Athletic Director Lyke for approximately one and a half to two hours.

85.     Ms. Hutcherson was candid, detailed, and direct regarding the hostile, abusive, and retaliatory environment Defendant Verdi created.

86.     Ms. Hutcherson explained that Defendant Verdi's conduct and the University's failure to intervene were the reasons she was leaving the program.

87.     This meeting placed Defendant University, at the highest levels of athletic administration, on actual notice of Defendant Verdi's misconduct.

88.     Despite this notice, Defendant University failed to initiate an investigation, impose corrective measures, or provide any remedial support.

89.     No interim protections were offered, and Defendant Verdi was allowed to continue coaching without restriction.

90.     Defendant University's inaction constituted deliberate indifference under Title IX.

91.     Throughout the 2024-25 season, players, parents, and staff members continued to raise similar concerns with administrators and Human Resources.

92.     More specifically, throughout the 2024-2025 season, Brooklynn Miles, a teammate of Plaintiff, made good-faith efforts to seek support and intervention through internal University channels, including repeated communications with Jennifer Tuscano, the Assistant Athletic Director and administrator responsible for supervising Defendant Verdi.

93.     Ms. Miles maintained text-message communications with Ms. Tuscano throughout the season whenever there were instances of verbal abuse, bad treatment, or escalation of the hostile environment.

94.     Ms. Miles's communications were contemporaneous, specific, and made in good faith with the expectation that the University would provide oversight, protection, and corrective action.

95.    Ms. Tuscano traveled with the team and, at all relevant times, had direct access to and awareness of the women's basketball environment and Defendant Verdi's conduct.

96.    Notably, Ms. Tuscano came to observe certain practices and was well aware of the hostile environment created by Defendant Verdi.

97.    Players on the team reasonably believed Ms. Tuscano served as a liaison or advocate capable of elevating player concerns to higher-level administrators and influencing oversight and accountability.

98.    Ms. Miles also voiced concerns directly to Defendant Verdi during the season in his office, in good faith, attempting to address the atmosphere and the treatment occurring within the program.

99.    Ms. Miles further raised concerns to Laurel Gift, a University representative, regarding the program environment and Defendant Verdi's conduct.

100.    Ms. Miles also raised concerns to Assistant Coach John Marcum, who was aware of the hostile environment and the impact it had on players.

101.    Ms. Miles's repeated disclosures placed Defendant University on actual notice of ongoing misconduct within the women's basketball program, including verbal and emotional mistreatment, intimidation, and a psychologically harmful environment.

102.    Despite receiving multiple reports, Defendant University failed to intervene, investigate, or impose meaningful discipline.

103.    No formal investigation was conducted, no interim measures were offered, and Defendant Verdi was allowed to continue coaching without restriction.

104.    This failure directly increased Plaintiff's exposure to harm.

105.    Plaintiff observed that multiple female student-athletes were pressured to leave the program, removed from the team, or left midseason, after expressing dissatisfaction, discomfort, or resistance to Defendant Verdi's abusive conduct. These departures were not voluntary but were induced through intimidation, scholarship threats, fabricated performance criticisms, or coercive administrative tactics.

**Prior Complaints, Retaliation Against Others, and Chilling Effect**

106.    Early in the 2024–2025 season, Isabella Perkins, and her family made good-faith efforts to seek redress through internal University channels.

107.    Ms. Perkins met with Ms. Tuscano, who traveled with the team and personally witnessed the hostile environment.

108.    Former assistant coach John Marcum also reported Defendant Verdi's conduct to Human Resources and senior administrators.

109.    No corrective action was ever taken against Defendant Verdi.

110.    Notably, Defendant Verdi retaliated against Ms. Perkins for her complaints by escalating mistreatment and ultimately removing her from the team on December 3, 2024.

111.    This retaliation sent a clear and unmistakable message that speaking out would result in punishment and removal.

112.    Plaintiff personally observed this retaliation and reasonably understood that formal complaints would not lead to protection.

113.    This environment of fear and silence was cultivated through deliberate inaction by Defendant University and exploited by Defendant Verdi as a tool of control.

**Retaliation, Scholarship Threats, and Transfer Portal Coercion**

114.    After Plaintiff and other players raised concerns, Defendant Verdi escalated retaliatory behavior.

115.    Near the end of the 2024-25 season, Plaintiff was informed, without formal University process, that her scholarship would not be renewed and that she would be forced into the NCAA transfer portal.

116.    Plaintiff had not violated team rules and had not underperformed.

117.    Defendant Verdi attempted to pressure or initiate actions to place Plaintiff into the NCAA transfer portal without her express, written consent.

118.    Under NCAA regulations, only a student-athlete may initiate a transfer portal request.

119.    Defendant Verdi's conduct constituted a blatant violation of those rules and functioned as a constructive expulsion.

120.    The threatened non-renewal of Plaintiff's scholarship, combined with attempted portal placement, amounted to a coercive ultimatum: accept removal or lose educational and financial support.

121.    Defendant University knew or should have known this conduct deprived Plaintiff of due process and failed to intervene.

**Procedural Failures, Emotional Harm, and Systemic Title IX Liability**

122.    Despite Plaintiff's repeated good-faith efforts to raise concerns, the University failed to provide required Title IX grievance procedures.

123.    Plaintiff was never afforded a hearing, investigation, written explanation, or meaningful opportunity to be heard.

124.    The absence of transparent and equitable grievance procedures left Plaintiff vulnerable to unchecked mistreatment.

125.    As a direct result of Defendants' conduct, Plaintiff suffered severe anxiety, depression, and mental exhaustion.

126.    Plaintiff began working with a licensed mental-health professional and continues to require treatment.

127.    Plaintiff's emotional injuries were the predictable result of prolonged exposure to negligent and abusive conduct by a person in institutional authority.

128.    Plaintiff's experience was not isolated, but part of a broader systemic failure by Defendant University to prevent, investigate, and remedy severe, pervasive, and objectively offensive abuse.

129.    The institutional channels ostensibly designed to protect student-athletes operated instead to silence, marginalize, and deter reporting. Title IX-adjacent personnel failed to initiate mandatory procedures, rendering the University's grievance framework inaccessible and ineffective in practice.

130.    As a direct and proximate result of Defendant University's deliberate indifference, Plaintiff suffered emotional distress, reputational harm, disruption of her education, loss of eligibility, and deprivation of athletic and educational opportunities.

## **CAUSES OF ACTION**

**Count I - Violation of Title IX (20 U.S.C. §§ 1681-1688) - Hostile Educational
Environment
(Against Defendant University)**

131.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

132.    Title IX prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance.

133.    The University of Pittsburgh receives federal funding and operates a women's basketball program that is subject to Title IX.

134.    Plaintiff was subjected to a hostile educational environment through persistent emotional, psychological, and discriminatory mistreatment by Head Coach Tory Verdi, including public humiliation, targeted exclusion, retaliation for protected activity, and inappropriate commentary grounded in sex-based stereotypes and gender roles.

135.    Verdi routinely isolated Plaintiff, manipulated her performance data, stripped her of leadership opportunities, and told her she "wasn't liked as a player but would be acceptable to date his son," a statement that dehumanized Plaintiff and reduced her value to traditional gendered expectations.

136.    Verdi's comments and conduct were degrading and contributed to an environment where female athletes were routinely diminished and subjected to emotional instability. Plaintiff's emotional health deteriorated, and her academic performance and athletic progression were significantly compromised.

137.    Defendant University had actual knowledge of the abusive environment and failed to take meaningful action, displaying deliberate indifference in the face of ongoing reports and red flags.

138.    This deliberate failure to address and remedy the hostile conditions denied Plaintiff the benefits of her scholarship and educational opportunity, including meaningful athletic development, mental health safety, and equitable treatment.

139.    Plaintiff's experience reflects broader disparities in how the University addresses complaints within women's versus men's athletic programs.

140.    As a direct and proximate result, Plaintiff suffered damages, including emotional distress, reputational harm, and lost educational opportunities.

### Count II - Violation of Title IX - Retaliation
### (Against Defendant University)

141.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

142.    Plaintiff engaged in protected activity when she reported Coach Verdi's misconduct to University staff, compliance officials, and institutional liaisons.

143.    In response, Verdi retaliated against Plaintiff by reducing her playing time, removing her from leadership roles, manipulating data to justify her marginalization, and ultimately dismissing her from the team.

144.    This retaliation was intended to silence and punish Plaintiff for speaking up, chilling her ability, and that of her peers, to assert rights under Title IX.

145.    The University failed to prevent or mitigate this retaliation, despite being on notice through direct and indirect reports.

146.    Verdi's retaliatory behavior was not isolated; other players who raised concerns were similarly ostracized or forced to transfer in violation of their scholarships.

147.    Plaintiff's removal from the team was not supported by performance or conduct, but rather flowed directly from her protected activity.

148.    As a result, Plaintiff suffered damages, including emotional harm, lost athletic eligibility, academic disruption, and financial hardship.

### Count III - Violation of Title IX (Coercion, Constructive Exclusion, and Retaliatory Use of the Transfer Portal)
### (Against Defendant University)

149.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

150.    Defendant Verdi's attempt to unilaterally place Plaintiff into the NCAA transfer portal without her consent constituted a materially adverse action designed to force Plaintiff out of the women's basketball program.

151.    This conduct was retaliatory, coercive, and discriminatory in nature, and would deter a reasonable student-athlete from engaging in protected activity.

152.    Defendant University had actual knowledge of this conduct and failed to take prompt and effective action to stop it.

153.    The misuse of administrative transfer mechanisms as a retaliatory tool deprived Plaintiff of equal access to educational and athletic opportunities in violation of Title IX.

### Count IV - 42 U.S.C. § 1983 - Violation of Fourteenth Amendment Rights
### (State-Created Danger, Retaliation, Equal Protection)
### (Against Defendant University)

154.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

155.    At all relevant times, Defendant University and Coach Verdi acted under color of state law and had a constitutional duty not to subject Plaintiff to retaliation or discriminatory treatment.

156.    Plaintiff was placed in a special relationship with Coach Verdi and the University by virtue of her scholarship and status as a student-athlete under their supervision and control.

157.    Verdi used his institutional authority to inflict psychological abuse and retaliate against Plaintiff for speaking out. He weaponized his role to manipulate, isolate, and humiliate Plaintiff, knowing she was vulnerable and reliant on him for athletic advancement.

158.    The University facilitated this abuse by failing to intervene despite actual knowledge, thereby creating and maintaining a danger that foreseeably resulted in Plaintiff's emotional and academic injury.

159.    Plaintiff was also denied equal protection as female athletes were disproportionately impacted by Verdi's conduct, and the University failed to offer comparable procedural protections or remedies available in other contexts.

160.    The constitutional violations by Verdi, individually, and the University collectively, give rise to liability under 42 U.S.C. § 1983.

161.    Defendant University is liable under 42 U.S.C. § 1983 because Plaintiff's injuries were caused by the University's policies, customs, and practices, including deliberate indifference to known coaching misconduct, failure to supervise and discipline athletic personnel, and ratification of Defendant Verdi's retaliatory and abusive conduct. These policies and customs were the moving force behind the constitutional violations and resulting harm suffered by Plaintiff.

**Count V - 42 U.S.C. § 1983 - Individual Liability of Coach Tory Verdi (Fourteenth Amendment Violations: State-Created Danger, Retaliation, Equal Protection) (Against Defendant Verdi)**

162.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

163.    At all relevant times, Defendant Verdi acted under color of state law and exercised state-delegated authority over Plaintiff's participation in the University's women's basketball program, including Plaintiff's athletic standing, scholarship-related benefits, playing time, team inclusion, and access to educational opportunities.

164.    Defendant Verdi is sued in his individual capacity for damages arising from his personal participation in constitutional violations actionable under 42 U.S.C. § 1983.

165.    Defendant Verdi affirmatively used his authority to create, escalate, and maintain a coercive and psychologically unsafe environment, including public humiliation, emotional degradation, intimidation, retaliation, and scholarship-based threats. Defendant Verdi's actions foreseeably placed Plaintiff in a position of heightened vulnerability and danger, and exposed Plaintiff to a foreseeable and substantial risk of psychological harm and educational disruption.

166.    Defendant Verdi acted with deliberate indifference to Plaintiff's safety and well-being by engaging in and perpetuating conduct that was objectively unreasonable under the circumstances and that foreseeably caused severe emotional distress, deterioration of mental health, and loss of educational and athletic opportunity.

167.    Plaintiff engaged in protected activity by reporting and/or opposing misconduct, discrimination, retaliation, and the hostile environment within the women's basketball program.

168.    Defendant Verdi retaliated against Plaintiff for engaging in protected activity by taking materially adverse actions, including but not limited to, marginalization, exclusion, targeted scrutiny, manipulated performance assessments, scholarship-related threats, and

constructive removal from the program. These actions would deter a reasonable student-athlete from engaging in protected conduct.

169.    Defendant Verdi intentionally subjected Plaintiff and similarly situated female student-athletes to discriminatory and unequal treatment, hostility, humiliation, and retaliatory coercion, without legitimate justification, thereby denying Plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment.

170.    Defendant Verdi used his state-delegated authority and position of control to cause and effectuate the deprivation of Plaintiff's scholarship-related benefits and athletic participation without fair notice, transparency, or meaningful opportunity to contest the decision. Defendant Verdi's conduct, including scholarship coercion and forced removal mechanisms, resulted in a deprivation of Plaintiff's protected interests and contributed to Plaintiff's constructive expulsion from the program.

171.    Defendant Verdi's conduct was willful, malicious, and in reckless disregard of Plaintiff's clearly established constitutional rights. Defendant Verdi is therefore individually liable to Plaintiff for compensatory damages, punitive damages, attorneys' fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and all other relief the Court deems just and proper.

**Count VI - Breach of Contract / Deprivation of Property Interest (Scholarship)**
**(Against Defendant University)**

172.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

173.    Plaintiff was awarded an athletic scholarship as a contractual exchange for participation in the women's basketball program, academic compliance, and athletic contribution.

174.    Plaintiff fulfilled her obligations. Her dismissal from the team, without process or explanation, constituted a breach of that agreement and deprived her of the financial and educational benefits guaranteed by the scholarship.

175.    Plaintiff's athletic scholarship constituted a contractual agreement between Plaintiff and Defendant University, pursuant to which Plaintiff agreed to maintain eligibility, comply with team and academic obligations, and participate as a student-athlete, in exchange for scholarship-related educational benefits, athletic participation, and institutional support.

176.    Plaintiff fulfilled her obligations under the scholarship agreement.

177.    Defendant University breached its contractual obligations and deprived Plaintiff of scholarship-related educational benefits by permitting and effectuating Plaintiff's constructive exclusion and/or removal from meaningful participation without fair procedures, transparency, or adherence to University policies and the Student-Athlete Handbook.

178.    As a direct and proximate result, Plaintiff suffered damages including loss of educational and athletic opportunity, financial harm, and emotional distress.

## Count VII - Intentional Infliction of Emotional Distress
### (Against Defendant Verdi)

179.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Verdi's conduct was extreme, outrageous, and intended, or recklessly certain, to cause emotional harm.

His actions included belittling Plaintiff in front of her teammates, publicly stating he wanted to kill himself because of the team, manipulating her performance statistics, retaliating for protected reports, and isolating her emotionally and physically.

These acts exceeded the bounds of decency, especially given the power dynamics between coach and player.

Plaintiff experienced severe emotional harm, requiring clinical intervention, and suffered long-term mental and emotional consequences.

## Count VIII - Negligent Infliction of Emotional Distress
### (Against Defendant University)

180.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

181.    The University owed a duty of care to Plaintiff as a student-athlete in its custody, particularly where it was aware of ongoing complaints and emotional distress.

182.    This duty was breached through failure to supervise, investigate, or intervene despite multiple reports of abuse.

183.    The University's negligence placed Plaintiff in foreseeable emotional and psychological danger, resulting in medically documented trauma and academic disruption.

184.    Plaintiff's injuries were preventable had appropriate safeguards and oversight been implemented.

## Count IX - Violation of Title IX (Denial of Equitable Process/Deliberate Indifference in Response to Complaints) *(20 U.S.C. § 1681)*
### (Against Defendant University)

185.    Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

186.    Title IX requires recipients of federal financial assistance to respond promptly and equitably to reports of sex-based harassment, retaliation, and hostile educational environments,

including by conducting appropriate investigations, implementing interim protective measures, and providing meaningful review and remedies.

187.    Defendant University received actual notice of Defendant Verdi's abusive, retaliatory, and discriminatory conduct and of the hostile environment within the women's basketball program through multiple reports to University officials, including athletic administrators responsible for oversight of the program.

188.    Despite actual notice, Defendant University failed to provide a prompt and equitable response, including failing to conduct a formal investigation, provide transparent findings, offer a meaningful hearing or independent review, or implement interim measures to protect Plaintiff and other student-athletes.

189.    As a result of Defendant University's inequitable and ineffective response, Plaintiff was left without meaningful recourse while the misconduct continued and escalated, depriving Plaintiff of equal access to the educational benefits and opportunities of participation in intercollegiate athletics.

190.    Upon information and belief, similarly situated student-athletes outside the women's basketball program were afforded greater procedural protections and institutional advocacy in disciplinary and eligibility-related matters, highlighting a gender-based disparity.

191.    Defendant University's denial of equitable process and deliberate indifference constitutes a violation of Title IX and its implementing regulations.

### Count X  - Negligent Hiring, Retention and Supervision
### (Against Defendant University)

192.    Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

193.    The University had a duty to ensure that coaches entrusted with student-athletes were competent, emotionally stable, and fit for their role.

194.    Prior to hiring Verdi, the University failed to conduct adequate due diligence into his prior conduct.

195.    During his tenure, the University ignored red flags, complaints, and evidence of psychological abuse toward multiple players.

196.    Its failure to supervise or discipline Verdi allowed a toxic culture to flourish, directly causing Plaintiff's injuries.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Raeven Boswell respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

### A.  **Declaratory Relief**

-    A declaration that the Defendant University violated Title IX by subjecting Plaintiff to a hostile educational environment, unlawful retaliation, and denial of equitable grievance procedures and eligibility protections;
-    A declaration that Defendant University, acting under color of state law, violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, as actionable through 42 U.S.C. § 1983;
-    A declaration that Defendant Verdi, in his individual capacity, violated Plaintiff's constitutional rights through state-created danger, retaliation for protected conduct, and discriminatory treatment in violation of the Equal Protection Clause.

### B.  **Injunctive Relief**

-    An order enjoining Defendant University and its agents from engaging in further retaliation against Plaintiff or any other students who report discrimination or abuse;

- An order mandating institutional reforms, including the adoption of clear and enforceable protections for student-athlete mental health and due process in grievance procedures.

### C. <u>Compensatory Damages</u>

- An award of compensatory damages in an amount to be determined at trial for emotional distress, mental anguish, reputational harm, medical expenses, and other economic and non-economic losses.

### D. <u>Punitive Damages</u>

- An award of punitive damages against Defendant Verdi in his individual capacity for willful, malicious, and recklessly indifferent conduct, in an amount sufficient to punish and deter similar future conduct.

### E. <u>Attorneys' Fees and Costs</u>

- An award of reasonable attorneys' fees, expert witness fees, and litigation costs pursuant to 42 U.S.C. § 1988, and any other applicable authority.

### F. <u>Other Relief</u>

- Any other relief that this Court deems just, equitable, or proper under the circumstances.

Respectfully submitted,

Date: <u>February 6, 2026</u>

Keenan Holmes, Esquire
PA ID #204520
Ebony Law, LLC

213 Smithfield Street
Pittsburgh, PA 15222

724.263.7530
kh@ebonylaw.com